MARY E. McCOLLUM, as Administratrix of the Goods, etc., of WILLIAM S. McCOLLUM, Appellant, *v.* THE MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, Respondent.

*Life insurance — defenses that the policy was obtained by fraud, and of a breach of warranty, are not inconsistent — election of remedies — evidence as to other insurance — written proof of the falsity of warranties calls for a decision by the court, upon a question of law.*

In an action brought to recover upon a policy of life insurance, a defense was interposed that the company, within two months after the issuing of the policy, had made a demand to rescind the contract of insurance and offered to return to the insured, the premium which he had paid, upon the ground that the policy was obtained by fraud. A further defense was interposed of a breach of warranty in the application for the insurance.

*Held,* that the defendant was not precluded from setting up the breach of warranty because of this attempted rescission of the original contract before the death of the insured or because of a refusal to pay the amount of insurance after his death to his personal representatives upon the ground that there was no contract of insurance outstanding for the reason that the same had been obtained by fraud.

*Brink* v. *Hanover Fire Insurance Company* (80 N. Y., 113) distinguished.

That there was no such election of remedies on the part of the company as to determine the rights of the parties.

*National Life Insurance Company* v. *Minch* (53 N. Y., 144) distinguished.

In reply to the question, "Are you now insured in any other company?" the insured answered, "No." It appeared that at the time he made this answer, he held certificates of membership of insurance on his life for $3,000 in the Buffalo Life and Reserve Association, and for $2,500 in the Rochester Mutual Aid and Accident Association.

*Held*, that the fact that such other life insurance was not in regular and authorized insurance companies, but was in aid and accident associations, did not make the answer a proper one.

That the fact that the agent of the insurance company was told by the assured of the existence of these outstanding policies, and that the agent advised him that the question in the application did not refer to such associations, did not excuse or justify the answer, in view of the fact that the powers of the agent were expressly limited by the following notice printed on the back of the policy:

"Powers of Agents. No agent has power to bind the company by receiving any representations or information not contained in the application for this policy."

*Grattan* v. *Metropolitan Insurance Company* (80 N. Y., 281) distinguished.

Where the proof, in regard to the falsity of the warranties contained in the application, is wholly in writing it imposes upon the court the duty of deciding the same as a matter of law, and precludes the submission of this question to the consideration of a jury.

APPEAL by the plaintiff from a judgment, entered in the office of the clerk of the county of Niagara on the 19th day of October, 1888, after a trial at the Niagara Circuit before the court and a jury, at which the court directed a verdict in favor of the defendant and ordered a judgment dismissing the complaint; and also from an order, entered in the Niagara county clerk's office on the 29th day of October, 1888, denying the plaintiff's motion for a new trial made upon the minutes of the court.

*Joel L. Walker*, for the appellant.

*Eugene Cary* and *Robert Sewell*, for the respondent.

MACOMBER, J.:

This action is brought upon ten policies of life insurance of $5,000 each, issued by the defendant to William S. McCollum, December 22, 1885, the loss in each policy payable to his personal representatives.

The defenses are: (1.) Within two months after the issuing of the policies, and in the month of February, 1886, the defendant rescinded the contract of insurance and offered to return to the insured, the premium which he had paid upon each policy, upon the

ground that the policies were obtained by fraud. (2.) A breach of warranty in the application for such insurance, wherein the insured represented that he had no other insurance upon his life at the time of the application for these policies. (3.) A breach of warranty in the application, in that he represented that he had never before been attended by any physician for sickness. (4.) That the insured committed suicide.

The attempt on the part of the company to rescind the contract of insurance in the month of February, 1886, was unsuccessful as a matter of negotiation, because the insured refused to accept the return of the premium and surrender the policies. What the result of an action in equity, to accomplish the object sought would have been, it is not needful to pause to inquire. The several policies remained unrescinded and outstanding at the time of the death of the insured which was caused by a pistol shot on the 25th day of June, 1886.

It is claimed by the learned counsel for the appellant, that this attempted rescission of the original contract before the death of the insured, and a refusal to pay the amount of insurance after his death to his personal representatives upon the ground that there was no contract of insurance outstanding because the same had been obtained by fraud, precludes the setting up of the defense of a breach of warranty, both in respect to the matter of previous life insurance and the matter of being attended by a physician. In this contention, we cannot concur with counsel. This case is clearly distinguishable from that of *Brink* v. *Hanover Fire Insurance Company* (80 N. Y., 113) and other like cases. The case before us, does not present a merely technical defense as did the case of *Brink* v. *Hanover Fire Insurance Company* (*supra*). The charge of fraud, under which it was attempted by the defendant to repudiate the contracts two months after the issuing of the policies, was not based upon any specified false or fraudulent representation or false warranty contained in the application, but arose from the conclusion arrived at by the company's officers that, through certain false representations, the insured had been enabled to get a larger life insurance than he was able to carry, and that his purpose was to relieve his own financial embarrassment by making reclamation upon this company. There is nothing in the selection of the legal position by the company

so taken which would preclude it from setting up any substantial defense upon the merits. The claim that there is no outstanding contract of insurance, but that the same had been rescinded for fraud, does not preclude the company from setting up a breach of warranty in case an action is brought upon the policy. There is no election of remedies which determines the rights of any party, as was the case of *The National Life Insurance Company* v. *Minch* (53 N. Y., 144). We see nothing inconsistent, either as a matter of pleading or as a matter of substantial defense, in having denied the existence of the contract and the setting up of the special defenses thereto growing out of a breach of warranty.

The insured answered " No " to the following question : "Are you now insured in any other company ? " It was shown, that at the time he made this answer, he held certificates of membership of insurance on his life for $3,000 in the Buffalo Life and Reserve Association, and for $2,500 in the Rochester Mutual Aid and Accident Association. This question was material to the risk, and called for important information ; of this there can be no question. It is argued, however, by appellant's counsel, that such other life insurance was not in the regular and authorized insurance companies, but was in aid and accident associations, and that insurance in such last-named companies was not a breach of the warranty. But by chapter 175 of the Laws of 1883, section 5, such companies are unquestionably life insurance companies. They have been so treated uniformly by the courts. (*Mayer* v. *Eq. Reserve Fund Life Assn.*, 42 Hun, 237 ; *Sherman* v. *Commonwealth*, 82 Ky., 102.)

It is insisted, however, on the part of the plaintiff, that the agent of the company was told by McCollum of the existence of these outstanding policies, and that the agent advised him that the question in' the application did not refer to such associations. From this it is argued that the company itself is estopped to deny the correctness of the advice so given by the agent, and the case of *Grattan* v. *Metropolitan Insurance Company* (80 N. Y., 281) is cited as an authority upon that proposition. In that case, and in all other cases preceding and succeeding it, where the rule here sought to be enforced was enunciated, the agent was acting palpably within the scope of his authority, and the company was in each case charged with responsibility for his acts. In the case before us, the limita-

tions of the powers of the agent were brought directly to the attention of the insured, for printed on the application signed by McCollum, and on the back of each of the policies, was the following conspicuous notice: "Powers of agents. No agent has power to bind the company by receiving any representations or information not contained in the application for this policy." The expression of opinion, therefore, of the agent that such prior insurance was not called for by the question, cannot justify the false answer made to the question put to the insured. (*Chase* v. *Hamilton Ins. Co.*, 20 N. Y., 52.) We think that this alleged breach of warranty was established at the trial, and was a defense to the action.

The insured was also asked by a question contained in the application: " Q. When attended by a physician?"   " Q. For what disease or ailment?"   He answered these questions as follows: " A. Never for sickness." These questions also called for important information which the insured was bound to give truthfully. This answer was made in the application December 16, 1885. There was produced and put in evidence, an application of the deceased made to the Buffalo Life and Reserve Association, dated November 5, 1885, six weeks previous to the application made to this defendant, in which were the following questions and answers : " Q. How long since you were attended by a physician, or have professionally consulted one? A. Eight years ago. Q. For what disease or ailment? A. Tonsilitis. Q. Give the name and residence of physician ? A. Dr. Talbot." The absolute truth of the statement contained in the application made to this defendant was warranted by the terms of the contract as follows: " It is hereby declared and warranted, that all the statements and answers as above made are complete and true, and that they, together with this declaration and agreement, constitute an application to the Mutual Life Insurance Company of New York for a policy of insurance, and are offered as a consideration for the policy hereby applied for," etc. No other evidence of the truth or falsity of the insured's answer to these questions in the application to the defendant was given. Even if the question was immaterial to the risk, yet the company was entitled to a truthful answer to it, and any untrue statement would vitiate the policy. (*Dwight* v. *Germania Life Ins. Co.*, 103 N. Y., 344; *Foot* v. *Ætna Life Ins. Co.*, 61 id., 571; *Cushman* v. *U. S. Life Ins. Co.*, 63 id., 404.)

It is argued, however, by counsel for the appellant, that tonsilitis is not a sickness within the meaning of McCollum's answer in the application for these policies. It is shown, however, by the testimony of Dr. Eddy, that tonsilitis is an inflammation of the tonsils, called by the common term quinsy, and commonly results from a cold, and that a person who has had it is much more liable to have his throat affected by colds than he would otherwise be; that it is liable to make a man quite ill and is oftentimes an indication of a scrofulous tendency. No effort was made at the trial to prove that the deceased was not, in fact, as ill as serious tonsilitis might cause him to be. But the deceased himself, who was a medical man, seems to have had no idea that tonsilitis was not a disease, for in the question put to him in his application to the Buffalo Life and Reserve Association he was asked when he was last attended by a physician, not for any mere ailment, but " for what disease," his answer was: " Eight years ago; tonsilitis."

The proof of these two false warranties being wholly in writing, imposed upon the court the duty of deciding the same as matters of law and precluded the court from submitting them to the consideration of the jury. (*Dwight* v. *Germania Life Ins. Co.*, 103 N. Y., 342.) If we are right in these views, it becomes unnecessary to consider the evidence relating to the question whether or not McCollum committed suicide.

Judgment and order should be affirmed.

BARKER, P. J., and DWIGHT, J., concurred.

Judgment and order affirmed.