# STATE OF MISSOURI, Appellant, v. VILLINES, Respondent.

## St. Louis Court of Appeals, May 10, 1904.

1. **GAMING:** **Horse Racing: Book Making.** Section 7419, Revised Statutes of 1899, prohibiting the registering of "bets or wagers," etc., in the plural, must be construed according to the terms of section 4157, and is violated by the recording of a single bet or. wager.

2. ———: ———: ———: **Construction of Statute.** In construing the language of section 7419, Revised Statutes of 1899, prohibiting an unlicensed person from registering bets "by mechanical or other means," "other means" must be construed to include means of a different class, because the word "mechanical" comprehends all of its class, and the registration of bets by means of initials or private marks of the betters, written on cards, is a violation of the statute.

3. ———: ———: ———: **Indictment.** An indictment under said section, which followed the language of the statute giving the name of one of the persons with whom the bet was made, the day and place the race was to be run, was sufficiently specific.

Appeal from St. Louis Court of Criminal Correction.—
*Hon. James T. Neville,* Judge.

REVERSED AND REMANDED ·(*with directions*).

*Charles P. Williams* for appellant.

(1) "Other means" must be construed as *ejusdem generis* with "mechanical," and could not be applied to merely human and physical means, apart from some machine. (2) "Bets" is plural, and upon strict construction of a highly penal statute, allegation and proof of more than one act of "registering or recording" was necessary.

BLAND, P. J.—The grand jury for the city of St. Louis returned the following indictment against the defendant:

"State of Missouri, City of St. Louis, ss.:

"Circuit court, city of St. Louis, December term, 1903.

"The grand jurors of the State of Missouri, within and for the body of the city of St.Louis, now here in court, duly empanelled, sworn and charged upon their oath present that James M. Villines, on the eighth day of May, one thousand nine hundred and three, at the city of St. Louis aforesaid, did willfully, knowingly and unlawfully record a certain bet of lawful money, of the United States, by means of a card upon which was written the name of the horse on which the bet was made, the initial or private mark of the person placing the money, and also the initial or private mark of the person accepting the money as said bet; which said bet was upon the result of a certain contest of speed of beasts, to-wit, horses, which was to take place thereafter within the limits of the State of Missouri; said James M. Villines then and there fixing the terms upon which he, the said James M. Villines would bet lawful money of the United States against the relative speed of each horse to the other horses named to contest in said contest of speed of beasts known as horse races, which was to take place thereafter on the eighth day of May, 1903, within the limits of the State of Missouri, at a race track in the city of St. Louis, State of Missouri, aforesaid, by then and there betting the then prevailing odds at said race track against one dollar lawful money of the United States, then and there bet by J. Scanlan upon the relative speed of a horse known as 'Budweiser' to the other horses named as contestants in the contest of speed of beasts which was to take place at the city of St. Louis, in the State of Missouri as aforesaid, at the time aforesaid, and by the said James M. Villines then and there

making divers bets of lawful money of the United States with divers other persons in divers amounts, which persons and amounts are to this informant unknown, upon the relative speed with each other of the several horses named as contestants in said contest of speed of beasts, which was to take place thereafter on the eighth day of May, 1903, within the limits of the city of St. Louis, State of Missouri, as aforesaid, and the said James M. Villines did willfully and unlawfully so register said bets by means of a device described above upon the results of a contest of speed of beasts aforesaid, in the manner aforesaid, and at the time and place aforesaid, without first having a license so to do from the Auditor of the State of Missouri, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State.

''And the grand jurors aforesaid, upon their oaths aforesaid, do further present that, James M. Villines, in the city of St. Louis, on the eighth day of May, 1903, did unlawfully engage in bookmaking by means of a device commonly called a 'Book' upon the result of a certain contest of speed of beasts, to-wit, horses, which was to take place thereafter within the limits of the State of Missouri, at a race track in the city of St. Louis in the State of Missouri; said James M. Villines then and there fixing the terms upon which he, the said James M. Villines would bet lawful money of the United States against the relative speed of each horse to the other horse named to contest in the said contest of speed of beasts known as horse races, which was to take place thereafter on the eighth day of May, 1903, within the limits of the State of Missouri, at a race track in the city of St. Louis, in the State of Missouri aforesaid, by then and there betting the then prevailing odds at said race track against one dollar lawful money of the United States then and there bet by J. Scanlan upon the relative speed of a horse known as 'Bud-

weiser' to the other horses named as contestants in a contest of speed of beasts which was to take place at the said city of St. Louis, State of Missouri, as afore-said, at the time aforesaid, and by said James M. Villines, then and there making divers bets of lawful money of the United States with divers other persons, in divers amounts, which persons and amounts are to this informant unknown, upon the relative speed with each other of the several horses named as contestants in the said contest of speed of beasts which was to take place thereafter on the eighth day of May, 1903, within the limits of the city of St. Louis, State of Missouri, as aforesaid; and the said James M. Villines did willfully and unlawfully so register said bets by means of a device described above upon the results of a contest of speed of beasts aforesaid, in the matter aforesaid and at the time and place aforesaid, without first having a license so to do from the Auditor of the State of Missouri. Against the peace and dignity of the State.''

Defendant moved to quash the indictment for the following reasons:

"First. Because the facts stated in the indictment do not constitute an offense against the laws of this State.

"Second. Because the indictment is vague and indefinite.''

The motion to quash was sustained, the indictment quashed, and the State appealed.

The indictment is bottomed on section 7419, Revised Statutes 1899. This statute makes it a misdemeanor for any person (not licensed) to ''record or register by mechanical or other means, bets or wagers, or sell auction pools, or engage in bookmaking by or through any device, book, instrument or contrivance whatever, upon the result of any trial or contest of skill, speed or power of endurance of man or beast which is to take place within or beyond the limits of this State.'' The statute may be violated in either one of the following ways:

First, by recording or registering bets by mechanical or other means. Second, by selling auction pools. Third, by engaging in bookmaking. The first count on the indictment charged a violation of the statute by the first means, and the second count a violation by the third means. The respondent has not favored us with a brief and we are left in the dark as to his contentions, except as we gather them from the motion to quash and the information furnished by appellant's statement and brief. From the latter we gather that it was contended in the lower courts that as the first clause of the statute designates "bets and wagers" in plural number, the recording of a single bet or wager by the means mentioned in the statute would not constitute a violation of the statute. There might be some force in this contention but for section 4157, Revised Statutes 1899, which provides: "Whenever, in any statute, words importing the plural number are used in describing or referring to any matter, parties or persons, any single matter, party or persons shall be deemed to be included, although distributive words may not be used." This statute, by construction, reads into section 7419, supra, the words "bet or wager" and the offense is as complete by registering or recording one bet or wager by any of the means prohibited as by recording one hundred bets or wagers. It is also contended that the phrase "by mechanical or other means," implies that the bet must be recorded by some mechanical device to bring it within the statute, that the means must be construed as *ejusdem generis* with mechanical. It is a general rule of construction of statutes that where there are general words following particular and specific words, the form must be confined to things of the same kind. Like all other rules of construction, the purpose of this rule is to get at the legislative intent. Its office is to suggest what was in the minds of the lawmakers when the law was enacted. It is said to be founded on common sense. It is not a club to be held over the head

of the court to compel a particular construction of a statute when its wording and common sense show that a different construction should be given it, as when the object of the act and the intention of the Legislature show that the general words should be understood in their ordinary sense. The particular word "mechanical" expresses a class and comprehends all the mechanical devices by which a bet can be mechanically recorded. However many mechanical devices there may be, the word "mechanical" comprehends them all. The term "other means"' is, therefore, meaningless, unless it comprehends some means other than a mechanical one.

In circumstances like these the Supreme Court, in the case of National Bank of Commerce v. Ripley, 161 Mo. l. c. 132, said: "Where the particular words exhaust the class, the general words must be construed as embracing something outside of that class. If the particular words exhaust the *genus* there is nothing *ejusdem generis* left." See also Ruckert v. Railway, 163 Mo. 260, 63 S. W. 814; O'Hara v. Foundry Co., 66 Mo. App. l. c. 55'; Kansas City v. Richardson, 90 Mo. App. 450.

The phrase "or other means" comes clearly within the doctrine of the Bank of Commerce case and we think the registration of a bet by mechanical means is but one of the ways by which it may be registered in contravention of the statute. It is suggested that this construction of the statute would bring within it a private bet on the result of a horse race made by A with B, if either party or both should enter the bet in a private memorandum book. The purpose of the statute is to take out of the hands of irresponsible and disreputable persons, and remove from back alleys ond other low places of resort in cities, the registration, etc., of bets and wagers on the result of horse races, etc., and to confine such registration to such reputable and responsible persons as the State Auditor may license to carry

out the modern and approved method of staking money on the result of horse races; and whether or not the registration of a particular bet comes within the purview of the statute must be determined by the facts of the case. That a mere private bet between A and B on the result of a race, though one or both may make a memorandum of such bet, does not come within the statute, we think is plain.

Both counts of the indictment follow the language of the statute and one of the persons with whom the bet was made (John Scanlan) is named in the indictment and the day and place when and where the race was to be run are specifically stated. We think this is sufficient to notify the defendant of the nature of the charge against him and that the particulars of the charge are sufficiently stated to enable him to prepare for his defense. The law requires nothing more. The judgment is therefore reversed and the cause remanded with direction to the court of criminal correction to set aside the judgment quashing the indictment and overrule the motion to quash. *Reyburn* and *Goode, JJ.,* concur.