CASE 52.—ACTION BY MARY QUINN AGAINST THE WEST-
ERN & SOUTHERN LIFE INSURANCE COMPANY
ON A POLICY ON THE LIFE OF HER DECEASED
HUSBAND.—November 17.

# Western & Southern Life Ins. Co. v, Quinn

Appeal from Jefferson Circuit Court (Common
Pleas Branch, Third Division).

MATT O'DOHERTY, Judge.

Judgment for plaintiff. Defendant appeals.—Re-
versed.

1. Insurance—Life Insurance—Falsity of Material Answers in
Application — Effect. — Where a question propounded to an
applicant for life insurance was material and the answer was
untrue, no recovery could be had on the policy, whether the
applicant knew it was untrue or not.

2. Compromise and Settlement—Requisites.—Where there is a
question between parties about which reasonable men may
differ as to the outcome, the parties may adjust the difference
between themselves by way of a compromise which will be
upheld, though it subsequently develops that one of the
parties was right and the other wrong.

3. Insurance — Compromise—Validity—Consideration.—The ques-
tion of the validity of a life insurance policy, because insured
falsely stated in his application that he had not applied to
any other insurer for insurance and been rejected, is one
about which reasonable men may entertain a substantial
doubt, and a compromise of the claim under the policy is
not without consideration.

4. Insurance—Compromise— Fraud— Evidence—Sufficiency.—Evi-
dence held not to show that the compromise of a claim under
a life policy was procured by the fraud of insurer.

5. Insurance — Compromise — Action to Set Aside — Petition—
Sufficiency.—The petition in an action by the beneficiary in
a life policy to set aside a compromise of the claim on the

ground of the fraud of insurer must allege that the beneficiary tendered to insurer the amount received under the compromise.

6. Judgment — Notwithstanding Verdict — Grounds.—Where the petition in an action to set aside a compromise of a life insurance claim, on the ground of the fraud of insurer, failed to allege that the money received under .the compromise had been tendered to insurer, the court under Civ. Code Prac. section 386, providing that judgment shall be given for the party whom the pleadings entitle thereto, must give a judgment for insurer, notwithstanding a verdict for plaintiff.

JAMES QUARLES for appellant.

### POINTS AND AUTHORITIES.

1. The court erred in overruling the appellant's demurrer to the petition and to the reply; in overruling the appellant's motion to abate the action until such time as the appellee should tender back what she had received from appellant in settlement of the claim sued on; in overruling appellant's motions for a peremptory instruction; and in overruling appellant's motion for judgment notwithstanding the verdict, all of which demurrers and motions were based upon the fact that the record showed that the appellee had neither refunded nor offered to refund the money she had been paid in settlement of her claim. (L. & N. R. R. Co. v. McElroy, 100 Ky., 153; Home Benefit Society v. Muehl, 169 Ky., 479.)

2. The motion for judgment notwithstanding the verdict was in time. (Ewell v. Jackson, 110 S. W., 860.)

3. The sole question was as to the bona fides of the compromise settlement. (Mitchell's Heirs v. Long, 5 Littell, 72; Creutz v. Hiel, 11 Ky. Law Rep., 652; Morgan v. Hodges, 15 L. R. A., 438, Note.)

4. The question and answer relating to rejection or postponement by another company was material. (American Mutual Aid Society v. Bronger, 12 Ky. Law Rep., 284.)

T. A. McDONALD, WM. McKEE DUNCAN and C. C. McMAHAN for appellee.

1. We submit that when a debt is liquidated, ascertained and due, and there is no valid controversy between the parties as to the liability, then a receipt in full of a larger sum, by the payment of less than is due will not be sustained, and must be regarded as a partial payment on the whole debt, there being no

consideration for the release of the unpaid part of the debt. As the debtor has not been injured by paying less than he owed he is not entitled to be reimbursed.

2. The doctrine laid down by the court in Jones v. Bullitt, 2 Littell, 51; Fenwick v. Phillips, 3 Met., 781; Vance v. Lukenbill, 9 B. Mon., 249, and Mannakee v. McCosky, 23 Ky. Law Rep., 515, has never been reversed, modified or doubted, and is the law of the case.

OPINION OF THE COURT BY JUDGE BARKER—Reversing.

When Michael J. Quinn died in 1906 there was an insurance policy on his life issued by the appellant company for $1,000, payable to his wife, Mary Quinn. After the death of the insured, the company denied its liability under the policy, because it claimed that in the application for insurance among the questions propounded to the applicant was whether or not he had ever applied to any other company for insurance and been rejected or postponed, to which he answered "No," that this answer was material and was untrue. After interviewing the widow, she and the appellant company agreed upon a compromise of the claim, by which it paid to her the sum of $750 in full of her claim under the policy in question. The company owed her $116 on another policy, and this was not in dispute. Thereupon it paid to the appellee the sum of $866 in full settlement of both of her claims against it, and the following receipt was issued:

"Form 25.

"Claimant's Receipt.    $866.00.    Compromise Settlement.

Louisville, Ky., April 26, 1906.

"Whereas the Western and Southern Life Insurance Company, of Cincinnati, Ohio, issued its policies 32776 and10289A on the life of Michael J. Quinn, and

whereas certain differences and disputes exist as to the liability of said company under said policies: Now, for the purpose of compromising and settling the said disputes and differences, the sum of eight hundred and sixty-six dollars has this day been paid to me, receipt of which I hereby acknowledge in full satisfaction, settlement and discharge of all liability of said company under said policies and the same is now herewith surrendered.

"(Signed) Mary Quinn.

"Witnesses:

("Signed) M. J. Brady,
                    "Alex Altsman,
                    "George A. Boissard."

After nearly nine months had expired from the date of this receipt, this action was instituted by the widow to recover the balance of $250 alleged to be owing her under the policy which had been compromised, and alleging that the compromise had been obtained by fraud, misrepresentation, and deceit. The company demurred to the petition because it did not allege the payment, or tender back, to the insurance company of the amount received by the plaintiff under the compromise. The general demurrer was overruled by the court, and then the company answered, denying the fraud. Upon a trial of the case before a jury a verdict was returned in favor of the plaintiff for the sum of $250. Thereupon the defendant entered a motion for a judgment non obstante verdicto, which was overruled. It also filed a motion for a new trial, which was overruled.

The evidence showed without question that prior to the application of Michael J. Quinn for the policy in dispute he had applied to another company for insurance, and had been rejected, and that his answer in

the application for the policy under discussion, that he had not been rejected, was untrue, but it did not certainly appear that Quinn had been informed of his rejection. Undoubtedly, if the question was material and the answer untrue, no recovery could have been had under the policy, whether the applicant knew it was untrue or not. Provident Saving Life Association v. Dees, 120 Ky. 285, 86 S. W. 522, 27 Ky. Law Rep. 670; Provident Saving Life Association v. Whayne, 93 S. W. 1049, 29 Ky. Law Rep. 160; Mutual Life Insurance Company v. Thompson, 94 Ky. 255, 22 S. W. 87, 14 Ky. Law Rep. 800; Union Central Life Insurance Co. v. Lee, 47 S. W. 614, 20 Ky. Law Rep. 839; American Aid Society v. Bronger, 91 Ky. 406, 15 S. W. 1118, 11 Ky. Law Rep. 902. Certainly it could not be said that with this fact existing there was not a question of the liability of the company about which reasonable men might differ. This being so, the dispute was one which the parties might compromise. Where such a compromise has taken place, it is immaterial that it should afterwards transpire that one or the other of the parties to the settlement was right. One of the parties to a disputed question of law must always be right; and, if the mere fact that it subsequently developed that one party was right and the other wrong may upset a compromise about it, there could be no basis of compromise of proposed litigation. The rule is that if there be a question between parties about which reasonable men might well differ as to the outcome, they must adjust it themselves by way of compromise, and this will be upheld by the courts. Mitchell's Heirs v. Long, 5 Litt. 72; American Mutual Aid Society v. Bronger, 91 Ky. 406, 15 S. W. 1118, 11 Ky. Law Rep. 902; Creutz v. Hiel, 89 Ky. 429, 12 S. W. 926; Morgan v. Hodges, 89 Mich.

404, 50 N. W. 876, 15 L. R. A. 438; Gray v. United
States S. & L. Co., 116 Ky. 976, 25 Ky. Law Rep. 1120,
77 S. W. 200; Taylor v. Patrick, 1 Bibb. 168; Fisher v.
Mays' Heirs, 2 Bibb 448, 5 Am. Dec. 626.

We are of the opinion that the question between
appellant and appellee as to the liability of the former
under the policy was one about which reasonable men
might entertain a substantial doubt; and, this being
so, the compromise can not be said to have been with-
out consideration. The evidence fails entirely to show
the slightest fraud or imposition practiced by the com
pany or its agents upon the appellee. As to this, we
can accept her own statement. The company had pro-
posed to compromise the matter, and offered her $500,
and then she said: "They claimed that, if I didn't
take something, it would be one way or the other, and
I said, 'You come back to-morrow, and I will make up
my mind what I intend to do,' and I asked them if
they would give me $750, and they wanted to give it
to me willingly, and I accepted it. I did not know
whether I was entitled to it, but I thought that I had
paid one year's premium, and that I was en-
titled to it. They only intended to give me
$500, and the next day I asked them if they
would give me $750, and that was the agreement."
It thus appears that the agents of the company were
only contending for the right of their employer to dis-
pute the validity of Mrs. Quinn's claim under the
policy. This they had a legal right to do; and, when
they proposed to give her $500, she declined to accept
at once, but took time to consider it, and the next day
herself offered to take $750 in compromise, and the
company acquiesced. She also shows that the agents
of the company, when they offered to settle for $500,
told her to consider the matter and let them know in

a day or two, saying to her that she "might study it up;" that they had come to compromise with her, but they did not intend to pay the full $1,000. A careful reading of Mrs. Quinn's testimony fails to show the alleged fraud or imposition on the part of the company of its agents. It is true she said she had been sick and was incapable of understanding business matters, but her whole testimony clearly refutes this. She was out of bed and received the agents of the company, and the next day after the check was given her she went down personally to her bank and deposited it. Perhaps her attitude towards the matter under discussion and her clear comprehension of the business proposition involved in it is better shown in the following answer than in any other part of her testimony. "Well, when they first came, they did not offer. They said they would not pay the full amount, and I asked them what amount they intended to pay, and one gentleman, I think it was the man from the home office, said he thought $500, and I said 'No,' I would take it to court before I would agree to compromise with them for that. Then they talked different things that had happened, and then I explained that, if they were satisfied to give me $750, I thought I would take it, and I signed the receipt for the full amount, $866." No reasonable mind could conclude after reading the foregoing answer that Mrs. Quinn did not understand and appreciate her legal rights in the matter of the proposed compromise.

In addition to all this, the petition was fatally defective in failing to state that the plaintiff had paid, or tendered back, the amount received under the compromise. This action was instituted to set aside and vacate the compromise for fraud and misrepresentation. In order to accomplish this, it was necessary

that she should first tender back the amount she had received. She could not inveigle the company into a compromise and receive its money, and, after having put it to such a disadvantage, sue for the balance of the disputed claim. This was held in the case of L. & N. R. R. Co .v. McElroy, 100 Ky. 153, 18 Ky. Law Rep. 730, 37 S. W. 844; Home Benefit Society v. Muehl, 109 Ky. 479, 59 S. W. 520, 22 Ky. Law Rep. 1378; Shields v. Lewis, 49 S. W. 803; 20 Ky. Law Rep. 1604; Cunningham v. Belknap, 60 S. W. 837, 22 Ky. Law Rep. 1582; City of Louisville v. Louisville Railway Co., 68 S. W. 840, 24 Ky. Law Rep. 540; L. & N. R. R. Co. v. Helm, 121 Ky. 645, 89 S. W. 709, 28 Ky. Law Rep. 603; Ingram v. Railway Co., 89 S. W. 541, 28 Ky. Law Rep. 509; McGill v. L. & N. R. R. Co., 114 Ky. 363, 70 S. W. 1048, 24 Ky. Law Rep. 1244. These authorities settle the principle quite beyond question. The court, therefore, erred in overruling the general demurrer to the petition because of the failure to allege that the money received by the compromise had been tendered back to the company, and after the verdict the motion of the defendant for a judgment non obstante verdicto should have been sustained. Section 386 of the Civil Code of Practice provides that judgment shall be given for the party whom the pleadings entitle thereto, though there may have been a verdict against him. Under the pleadings the defendant was clearly entitled to a judgment. We are of opinion that there was no evidence of fraud in the obtention of the compromise sought to be set aside, and the matter in dispute was one which legitimately authorized a compromise to be made.

Judgment reversed, with directions to set aside the order overruling the motion for a judgment non

obstante verdicto, and to enter a judgment in favor of the defendant dismissing the petition.